IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DAVID HAWTHORNE                                                    PLAINTIFF

v.                                             CIVIL ACTION NO. 3:11cv518-DPJ-FKB

TRUCK TRAILER AND EQUIPMENT, INC.                                  DEFENDANT

ORDER

This age-discrimination case is before the Court on Defendant's Motion to Compel

Arbitration [16].  Because the Court concludes that Plaintiff did not agree to submit disputes with

his employer to arbitration, the motion will be denied.

I.        Facts and Procedural History

Plaintiff David Hawthorne began his employment with Defendant Truck Trailer and

Equipment, Inc. ("TT&E") in September 1971.  In July 2002, TT&E issued an Employee

Handbook to all its employees, including Hawthorne.  The handbook contained an Arbitration

Policy that purports to require submission of "all employment related disputes which are based

on a legal claim" to arbitration in lieu of litigation.  Mot. to Compel [16] Ex. A, Employee

Handbook, at 27.  The first page of the handbook states that "except for the provisions of the

Employment Arbitration Policy, [the handbook's provisions] do not establish a contract or any

particular terms or condition of employment between you and Truck Trailer and Equipment."

*Id.* at 2.  The handbook came with an acknowledgment form; employees who signed that form

"agree[d] to submit all employment related disputes based on a legal claim to arbitration under

TT&E's policy."  Hawthorne did not sign a copy of the acknowledgment form.

On April 1, 2011, TT&E terminated Hawthorne's employment.  Believing the

termination to have been illegally based on his age, Hawthorne filed a charge of discrimination

with the EEOC and received a notice of right to sue.  On August 15, 2011, Hawthorne filed this lawsuit under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–678.  More than eight months later, on April 25, 2012, TT&E filed its motion to compel arbitration.  Hawthorne responded in opposition, and TT&E filed a reply.  The Court has personal and subject matter jurisdiction and is prepared to rule.

II.     Analysis

Section 3 of the Federal Arbitration Act authorizes the Court to stay litigation pending arbitration where "the issue involved in [the] suit or proceeding is referable to arbitration under . . . an agreement [in writing for such arbitration.]"  9 U.S.C. § 3.  In considering a motion to compel arbitration, the Court first must determine whether the parties agreed to arbitrate the dispute in question.  *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537 (5th Cir. 2003). "This determination involves two considerations:  (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Id.* (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). The question of whether there is a valid agreement to arbitrate is governed by state contract law. *May v. Higbee Co.*, 372 F.3d 757, 764 (5th Cir. 2004) (citing *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004)).  And contrary to TT&E's contentions, this question is not subject to the federal policy favoring arbitration.  *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 215 (5th Cir. 2012) (citations omitted).

Thus, TT&E has an initial burden of proving a valid contract under Mississippi law.  *Iuka Guar. Bank v. Beard*, 658 So. 2d 1367, 1371 (Miss. 1995) (holding that proponent of contract carries burden of proving its existence).  Under Mississippi law, a valid contract must have the

2

"mutual assent" of the parties.  *Byrd v. Simmons*, 5 So. 3d 384, 388 (Miss. 2009).  The

Mississippi Supreme Court has explained this requirement:

> Ordinarily one of the acts forming part of the execution of a written contract is the signing of it, and the mere fact that a written instrument purports to be an agreement does not constitute it a binding contract where it is not signed. However, signature is not always essential to the binding force of an agreement, and whether a writing constitutes a binding contract even though it is not signed or whether the signing of the instrument is a condition precedent to its becoming a binding contract usually depends on the intention of the parties.  The object of a signature is to show mutuality o[f] assent, but these facts may be shown in other ways, as, for example by the acts or conduct of the parties.

*Turney v. Marion Cnty. Bd. of Educ.*, 481 So. 2d 770, 774 (Miss. 1985) (quoting 17 C.J.S.

Contracts § 62 (1963)).

In this case, neither party suggests that Hawthorne signed an agreement to arbitrate.

Rather, TT&E asserts that Hawthorne's assent can be inferred by his conduct.  Specifically,

TT&E says that Hawthorne's continued employment following receipt of the Employee

Handbook containing the Arbitration Policy shows he intended to be bound.

In *May v. Higbee Co.*, the Fifth Circuit held that, under Mississippi law, "[c]ontinuing

one's employment after receiving notice that continued employment will constitute assent is a

recognized manner of forming a contract."  372 F.3d at 764.  There, the plaintiff signed an

acknowledgment notifying her that she would be "deemed to have agreed" to the terms of an

arbitration provision "by virtue of . . . continuing employment" with the defendant.  *Id.*  The Fifth

Circuit held that having received such notice, the plaintiff manifested her assent by continuing

her employment and was bound to the arbitration agreement.[1]  *Id.*

---

[1] The fact that May signed an acknowledgment merely proved notice and was not itself considered assent to be bound.  *Carson v. Higbee Co.*, 149 F. App'x 289, 293 (5th Cir. 2005) (applying *May* to employee who did not sign).

This case differs from *May* in a critical respect:  here, the purported contract failed to inform Hawthorne that continuing his employment at TT&E would amount to an acceptance of the terms of the Arbitration Policy.  Instead, the employee handbook stated that "except for the provisions of the Employment Arbitration Policy, [the handbook's provisions] do not establish a contract or any particular terms or conditions of employment."  Mot. to Compel [16] Ex. A, Employee Handbook, at 2.  This language falls dramatically short of the warning in *May* that continued employment constitutes "acceptance."  And TT&E has offered no authority finding a valid contract based on similar language.

Even assuming TT&E's handbook language was sufficient to inform an employee that continued employment constitutes acceptance, TT&E has not proven that Hawthorne was aware of this language.  Unlike *May* and other similar cases where parties sign contracts, Hawthorne's knowledge of the handbook's content cannot be presumed.  *See May*, 372 F.3d at 764 (holding that plaintiff's signature on acknowledgment form established notice); *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 726 (Miss. 2002) ("In Mississippi, a person is charged with knowing the contents of any document that he executes.") (citations omitted).

TT&E hopes instead to show Hawthorne's knowledge through two affidavits from its Vice President, Allen Fielder.  In the first, he states that "[a]ll employees were placed on notice that the Arbitration Policy contained in the Handbook applied to them."  Mot. to Compel [16] Ex. B, Fielder Aff. ¶ 3.  In his supplemental affidavit, Fielder recounts that TT&E held meetings with managers, including Hawthorne, to discuss the new handbook and to inform them that the provisions applied to them.  Def.'s Reply [21] Ex. A, Fielder Aff. ¶ 3.  Neither affidavit states that the employees were told continued employment constituted acceptance of the Arbitration

4

Policy.  And despite his emphatic statement that Hawthorne attended the meetings and was

generally informed of the arbitration policy, Fielder could not recall whether he or someone else

notified Hawthorne.  Pl.'s Resp. [19] Ex. B, Fielder Dep. 102.  Plus, when asked whether

Hawthorne was given the handbook, Fielder merely stated, "He would have been."  *Id.*  Yet he

also conceded that employees were required to sign acknowledgments upon receipt of their

handbooks and that there is no evidence Hawthorne signed anything.  *Id.* at 103.

 Contrasted with Fielder's testimony is Hawthorne's flat denial of having ever been told

that "the employee handbook contained a provision requiring [him] to submit any dispute to

arbitration."  Pl.'s Resp. [19] Ex. A, Hawthorne Aff. ¶ 3.  In fact, Hawthorne denies that he knew

or "was . . . ever told by Truck Trailer and Equipment, Inc., that by continuing my employment, I

would be agreeing to arbitrate any legal dispute I had related to or arising out of my

employment."  *Id.*  ¶ 4.  The Court concludes that TT&E failed to show that Hawthorne was on

notice that continued employment constituted acceptance.

 Under these circumstances—where the handbook did not clearly state that continued

employment would constitute acceptance and where Hawthorne was not otherwise aware that

continued employment with TT&E would subject him to binding arbitration—the fact that

Hawthorne remained in TT&E's employment cannot be interpreted as a manifestation of assent

to the Arbitration Policy.  *See Patton v. Coca-Cola Enters., Inc.*, No. 3:09cvTSL-FKB, 2010 WL

1860002, at *2 (S.D. Miss. May 7, 2010) ("The burden is on CCE to affirmatively establish that

plaintiff manifested his agreement to be bound by the [arbitration agreement] by continuing in his

employment with the company when he knew the terms of the [agreement] and knew that by

continuing in his employment with the company, he was agreeing to be bound by the terms of the

[agreement.]").  And because TT&E has failed to establish a valid agreement to arbitrate between the parties, the motion to compel arbitration will be denied.[2]  *See Hill v. GE Power Sys.*, 282 F.3d 343, 347 (5th Cir. 2002) ("It is axiomatic that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (quoting *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986))).

III.    Conclusion

        The Court has considered all of the parties' arguments.  Those not addressed would not have changed the result.  For the foregoing reasons, Defendant's Motion to Compel Arbitration [16] is denied.  The parties are instructed to contact the magistrate judge to set the case for a status conference.  The magistrate judge may then consider lifting the stay and revising, as necessary, the case management order.

        **SO ORDERED AND ADJUDGED** this the 11th day of September, 2012.

                                    s/ *Daniel P. Jordan III*
                                    UNITED STATES DISTRICT JUDGE

---

[2]Finding no valid arbitration agreement between the parties, the Court need not consider Hawthorne's alternate argument that TT&E waived the right to arbitrate by engaging in the litigation process.